IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 09-0489-WS-B ) |
| WIREGRASS CONSTRUCTION CO. INC., | ) ) ) ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss and the defendant's alternative motion to stay. (Docs. 13, 31). The parties have filed briefs in support of their respective positions, (Docs. 14, 21, 25, 30, 31, 33), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that both motions are due to be denied.

## BACKGROUND

Blue Water Off Shore, LLC ("Blue Water") owned the TAR BABY, a 61-foot yacht ("the Vessel"). Blue Water obtained a policy of insurance on the Vessel ("the Policy"), with New Hampshire Insurance Company ("New Hampshire") as the insurer. On the night of August 1, 2007, with Captain James Cooper, an employee of Wiregrass Construction Co. ("Wiregrass"), at the helm, the Vessel allided with a submerged wall, was towed to port, and was judged a total loss.

New Hampshire filed a declaratory judgment action in this Court, seeking a declaration that coverage is excluded because Cooper was operating the Vessel under the influence of alcohol at the time of the allision. Blue Water counterclaimed for breach of contract and bad faith, seeking policy limits of $1.75 million and additional damages.

The jury awarded Blue Water $1.75 million for breach of contract. New Hampshire appealed in August 2009, and the case remains before the Eleventh Circuit. New Hampshire filed this action against Wiregrass in July 2009.

All three counts of the amended complaint allege that Cooper acted negligently, recklessly or wantonly. Count One alleges that Wiregrass is vicariously liable for Cooper's negligence. Count Two alleges that Wiregrass negligently (or wantonly) entrusted the Vessel to Cooper, and Count Three alleges that Wiregrass negligently (or wantonly) hired, trained, supervised, managed or instructed Cooper concerning operation and navigation of the Vessel.

## DISCUSSION

### I. Motion to Dismiss.

Wiregrass asserts that the Court lacks subject matter jurisdiction, both because New Hampshire lacks standing and because its claim is not ripe. Wiregrass also asserts that New Hampshire is precluded from pursuing Wiregrass based on collateral estoppel and estoppel.

#### A. Subject Matter Jurisdiction.

Wiregrass claims that New Hampshire lacks standing both because it is not the real party in interest and because it has suffered no injury, and it argues that New Hampshire's claim is not ripe because it is based upon a contingent future event. (Doc. 14 at 5-10). Wiregrass' jurisdictional arguments all hinge on a single point: that New Hampshire has not paid Blue Water the $1.75 million awarded by the jury. This is correct as far as it goes, but it does not go far enough. New Hampshire may not have paid that judgment, but it has satisfied a different judgment, entered against Blue Water in favor of the entity that towed the Vessel, by paying $27,379.03 to the prevailing salvor. (Doc. 21, Exhibit 4,

¶ 5; *id.*, Exhibit 5).[1]  As to this payment, New Hampshire has suffered injury, its loss is not contingent on any future event, and it is the real party in interest to recover the amount of the judgment.

Wiregrass disputes none of these points.  Instead, it insists that New Hampshire's payment is irrelevant because the amended complaint does not seek recovery of this sum but only of the $1.75 million.  (Doc. 25 at 3).  The amended complaint, however, alleges that the misconduct of Wiregrass and Cooper caused the Vessel "to be damaged, sunk and lost," notes the subsequent towing of the disabled Vessel, and demands judgment of Wiregrass "for *compensatory* and punitive *damages in an amount to be demonstrated at the trial* of this cause."  (Doc. 6 at 3, 4 (emphasis added)).  Wiregrass has not explained how such allegations can be construed as limiting the compensatory relief sought to $1.75 million.

New Hampshire identifies other elements of out-of-pocket expenses it has incurred due to the alleged wrongdoing of Wiregrass and Cooper: (1) attorney's fees defending the salvage suit ($59,218.75); (2) supersedeas bond premium in the declaratory judgment action ($21,875); (3) Vessel storage fees in an unspecified amount; and (4) attorney's fees and costs in defense of the declaratory judgment action, also in an unspecified amount.  (Doc. 21 at 4-6; *id.*, Exhibit 4, ¶¶ 4-6).  Given the open-ended demand for compensatory damages in the amended complaint, Wiregrass cannot prevail simply by insisting that New Hampshire does not seek recovery of these elements of damage.

In its reply brief, Wiregrass appears to suggest that, despite the clear ripeness of the claim as discussed above, the action must be dismissed because that portion of the claim concerning the $1.75 million depends on a future contingent event, i.e., the outcome of New Hampshire's appeal.  (Doc. 25 at 6).  Wiregrass offers no authority or other support for the proposition that a ripe claim must nevertheless be dismissed as

---

[1]Wiregrass acknowledges that the Court may consider such evidence.  (Doc. 14 at 4 n.1).

unripe if additional damages may accrue in the future, and the Court will not endeavor to supply the deficiency.

In its reply brief, Wiregrass also introduces a new argument: that New Hampshire lacks standing because its losses are not "fairly traceable" to Wiregrass' alleged conduct. (Doc. 25 at 4-5).[2] Cooper, who wrecked the Vessel, was Wiregrass' employee, and the amended complaint alleges that Wiregrass is liable: (1) vicariously, as the employer; (2) directly, for negligently entrusting the Vessel to Cooper; and (3) directly, for negligently training, supervising, etc. its employee. All of New Hampshire's damages flow directly from the loss of the Vessel, and those losses are far more than "fairly traceable" to Wiregrass' alleged actions and omissions as described above. That Cooper, the local agency that allegedly failed to deliver the Policy, and New Hampshire itself may have contributed to those losses does not, as Wiregrass believes, (*id*.), sever the causal connection for purposes of standing analysis.

### B. Collateral Estoppel.

All three counts of the amended complaint depend upon the allegation that Cooper negligently or wantonly operated the Vessel, resulting in its destruction. Wiregrass argues that the verdict in the declaratory judgment action definitively resolved the issue of Cooper's negligence vel non and that New Hampshire is collaterally estopped from revisiting that issue in this lawsuit.

As Wiregrass acknowledges, one element of collateral estoppel or issue preclusion is that "the determination of the issue in the prior litigation must have been a critical and

---

[2]District courts, including this one, ordinarily do not consider arguments raised for the first time on reply. *See Park City Water Authority v. North Fork Apartments, L.P.* 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). However, because the issue goes to the Court's subject matter jurisdiction, *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006), the Court addresses the argument.

necessary part of the judgment in that action." *CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003) (internal quotes omitted). An issue is "determin[ed]" only if it is resolved in the prior litigation, and it is "critical and necessary" to the judgment only if it is the central holding and not an alternative holding or something short of a holding. *E.g., Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (issue must be "resolved"); *S.E.L. Maduro, Inc. v. M/V Antonio de Gastaneta*, 833 F.2d 1477, 1483 (11th Cir. 1987 (issue must be "adjudicated"); *Dennis v. United States Bureau of Prisons*, 325 Fed. Appx. 744, 747 (11th Cir. 2009) (an alternate holding does not support collateral estoppel).

Wiregrass argues that the jury necessarily found that Cooper was not negligent, because New Hampshire asserted that coverage was excluded by his negligence and New Hampshire lost the case. Wiregrass' position misapprehends what occurred in the declaratory judgment action. Having presided over the trial of that action, the Court knows the accuracy of New Hampshire's characterization of the issues presented to the jury. New Hampshire argued that coverage was precluded by two specific exclusions, one of which was for lack of reasonable care in the operation of the Vessel. Blue Water responded that the exclusions did not apply, but it also argued that New Hampshire could not rely on the exclusions even if they did apply, due to New Hampshire's failure to deliver the Policy. The jury charges instructed the jury as to these alternate theories. The general verdict form contained no special interrogatories asking the jury to explain the reasoning behind its decision; instead, it asked only whether New Hampshire or Blue Water prevailed as to the contract claim.

The verdict form thus reveals nothing of the issue or issues the jury decided. It is possible the jury found that Cooper was not negligent, but it is equally possible the jury found that New Hampshire was estopped to rely on Cooper's negligence, due to a failure to deliver the Policy. The jury could also have found estoppel without reaching any decision on whether Cooper was negligent. Even if the jury found that Cooper was not

negligent, if it also found New Hampshire to be estopped, the former finding would still be no more than an alternate holding and thus insufficient to support collateral estoppel. All this is of course idle speculation concerning what the jury might have found, and speculation does not meet Wiregrass' stiff burden.

In its reply brief, Wiregrass suggests that, although New Hampshire is not presently collaterally estopped to assert Cooper's negligence, it could become collaterally estopped at some point in the future, should the Eleventh Circuit reverse the judgment, the case be remanded for retrial, and a jury on retrial (unlike the first jury) unequivocally decide that Cooper was not negligent. Because this could possibly occur one day, Wiregrass concludes this case is not ripe. (Doc. 25 at 8). Wiregrass identifies no authority or other support for the proposition that the possibility of another court someday deciding an issue relevant to a case in which the plaintiff has already suffered injury prevents that case from being ripe. Again, the Court will not construct or support an argument on Wiregrass' behalf.[3]

**C. Estoppel.**

Wiregrass suggests that New Hampshire should be estopped from prosecuting this action because it obtained a supersedeas bond that operates to stay Blue Water's enforcement of the $1.75 million judgment. (Doc. 14 at 14). Wiregrass does not even identify the elements of an estoppel, much less apply them, and the Court will not do so on its own. In any event, the argument extends only to the $1.75 million judgment and thus does not touch the other elements of damage discussed in Part I.A.

---

[3]Wiregrass appears to argue that, even if collateral estoppel does not apply, it is somehow not "fai[r]" for New Hampshire to litigate the issue of Cooper's misconduct herein. (Doc. 25 at 8). This argument is inadequately developed to allow its consideration. *See, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue.").

### D. Policy Provisions.

In its reply brief, Wiregrass for the first time argues that it is an insured under the Policy and that Alabama precludes New Hampshire from obtaining subrogation from its insured. (Doc. 25 at 9-10).[4] The definitional and factual issues identified by New Hampshire, (Doc. 30 at 4-6), none of which are addressed by Wiregrass, are sufficient to require rejection of its argument at this time.

## II. Motion to Stay.

Should its motion to dismiss be denied, Wiregrass requests the Court to stay proceedings in this case pending resolution of the appeal in the declaratory judgment action. Most of New Hampshire's alleged damages from Wiregrass' alleged misconduct are tied up in the appeal, and an appellate decision reversing the Blue Water judgment would greatly reduce the amount in controversy here. Wiregrass urges that considerations of judicial economy counsel a stay. (Doc. 31 at 1-3).

"[A] district court [has] discretion to stay a case pending the resolution of related proceedings in another forum." *Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). However, a stay that is "immoderate" abuses that discretion. *Id*. "In considering whether a stay is 'immoderate,' we examine both the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay." *Id*. New Hampshire relies on *Ortega Trujillo* to oppose Wiregrass' motion.

As to the scope of the stay, Wiregrass proposes that it last "until the Eleventh Circuit disposes of New Hampshire's appeal." (Doc. 31 at 3). As of this date, briefing before the Eleventh Circuit has not concluded. Once it has, a panel will review the appeal

---

[4]As noted in Part I.A, this Court does not sanction the practice of introducing new arguments in a reply brief. Because, and only because, New Hampshire sought and obtained permission to file a sur-reply brief to address this argument, (Docs. 26-27), the Court addresses the argument.

-7-

and determine whether oral argument is appropriate. If the case is sent to oral argument, it will be several months before the case can be heard. With or without oral argument, it may be a number of months after presentation of briefs and/or oral argument before an opinion is released. Because one of New Hampshire's primary issues on appeal concerns the proper construction of an Alabama statute, the Eleventh Circuit may elect to submit a certified question to the Alabama Supreme Court, and this process could consume an unquantifiable but significant additional number of months. After the Eleventh Circuit issues a decision, the parties may seek rehearing and may even seek rehearing en banc. The proposed stay is, in a word, indefinite,[5] and "[t]he case law illustrates that, in a case like this one, the interests of judicial economy alone are insufficient to justify such an indefinite stay." *Ortega Trujillo*, 221 F.3d at 1265.

Perhaps anticipating this result, Wiregrass suggests that, in addition to judicial economy, a stay should be ordered because "New Hampshire's appeal involves issues which are critical to the determination of this action and should be decided prior to proceeding with this action." (Doc. 31 at 2). There is no reason to believe the Eleventh Circuit will determine whether Cooper was negligent.[6] The only issue Wiregrass identifies is whether the $1.75 million judgment will be upheld, but that issue does not impact Wiregrass' potential liability in this action, only the scope of the damages to be awarded should New Hampshire prevail herein. The extent of damages may impact

---

[5]*See Ortega Trujillo*, 221 F.3d at 1264 (a stay in place "until the Bahamian Courts conclude their review" is indefinite); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1286, 1288 (11th Cir. 1982) (a stay "pending determination by the Iran-United States Claims Tribunal of its jurisdiction to hear these [third-party] claims" is indefinite); *Hines v. D'Artois*, 531 F.2d 726, 728, 733 (5th Cir. 1976) (a stay pending the filing of an EEOC charge and the final conclusion of EEOC proceedings is indefinite).

[6]The Eleventh Circuit may address whether the evidence was sufficient to support a finding that Cooper was not negligent, but it could not, in view of the general verdict, hold that the jury in fact found that Cooper was not negligent.

Wiregrass' interest in the case,[7] but it is not an issue antecedent to a determination of its liability.[8]

## CONCLUSION

For the reasons set forth above, Wiregrass' motions to dismiss and to stay are **denied**.

DONE and ORDERED this 20th day of May, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[7]Even ignoring the $1.75 million, Wiregrass has plenty of dollars to fight about. The damages identified by New Hampshire in Part I.A exceed $108,000, and New Hampshire also seeks attorney's fees expended in its third-party litigation with Blue Water, which likely are in the same ballpark.

[8]Wiregrass relies on *United Gas Pipe Line Co. v. Tyler Gas Service Co.*, 247 F.2d 681 (5th Cir. 1957). That case upheld a stay pending the resolution of related administrative proceedings "which may be decisive." *Id.* at 684. As discussed above, the appeal of the declaratory judgment action cannot be decisive of the instant action.